INSURA PROPERTY AND CASUALTY COMPANY, Plaintiff-Appellant, v. CHRISTINA STEELE, Defendant-Appellee.

Fifth District   No. 5—02—0716

Opinion filed November 6, 2003.

Robert J. Franco and Richard M. Kuntz, both of Bollinger, Ruberry & Garvey, of Chicago, and Kevin F. Blaine, of Schrempf, Blaine, Kelly & Durr, Ltd., of Alton, for appellant.

Richard R. Cain, of Cadagin & Cain, of Collinsville, for appellee.

JUSTICE CHAPMAN delivered the opinion of the court:
The plaintiff, Insura Property and Casualty Company (Insura), ap-

peals from an order of the Madison County trial court ordering it to provide underinsured-vehicle coverage to an insured who was injured while riding as a passenger on an all-terrain vehicle (ATV) designed primarily for off-road use. On appeal, Insura contends that the trial court erred in finding that its policy provision excluding coverage for off-road vehicles was unenforceable under the Illinois Insurance Code provision mandating underinsured-motorist coverage (215 ILCS 5/143a—2(4) (West 2000)). We reverse.

## I. BACKGROUND

On April 21, 2000, the defendant, Christina Steele, was injured when the ATV on which she was a passenger was involved in an accident. At the time, Steele was a named insured on an automobile insurance policy issued to her parents, Bruce and Judy Steele, by Insura. The policy provided, in relevant part:

"A. We will pay compensatory damages which an 'insured' is legally entitled to recover from the owner or operator of an 'underinsured motor vehicle' because of 'bodily injury':

\* \* \*

C. 'Underinsured motor vehicle' means a land motor vehicle or trailer of any type to which a bodily injury liability bond or policy applies at the time of the accident, but its limit for bodily injury liability is less than the limit of liability for this coverage.

However, 'underinsured motor vehicle' does not include any vehicle or equipment:

\* \* \*

5. Designed mainly for use off public roads while not upon public roads."

There is no dispute that the ATV on which Steele was riding was designed primarily for off-road use and that it was, in fact, being used off public roads when the accident occurred.

On January 31, 2001, Steele filed a lawsuit against the driver of the ATV, Deanna Townzen. On April 12, 2002, Steele's attorney sent a letter to Insura informing it that Steele had settled with Townzen's insurer for her policy limits of $20,000 and demanding the remainder of Steele's damages under the underinsured-vehicle coverage.

On June 21, 2002, Insura filed the instant declaratory judgment petition seeking a determination that, by virtue of the above-quoted coverage exclusion, it did not have an obligation to provide underinsured-vehicle coverage to Steele. Steele argued to the trial court, as she does on appeal, that the exclusion in Insura's policy is unenforceable under the Illinois Insurance Code (Insurance Code) (215 ILCS 5/1 *et seq.* (West 2000)). On July 15, 2002, Insura filed a motion for a judgment on the pleadings. On October 18, 2002, the

trial court denied Insura's motion, entered a judgment in Steele's favor, and ordered Insura to honor her claim. This appeal followed.

## II. ANALYSIS

■ The facts are not in dispute, and the parties agree that the policy is unambiguous. The only question before us is whether section 143a—2(4) of the Insurance Code (215 ILCS 5/143a—2(4) (West 2000)), which mandates underinsured-vehicle coverage, renders the provision unenforceable. See 215 ILCS 5/442 (West 2000) (provisions of insurance policies purporting to exclude coverage mandated by the Insurance Code are unenforceable). Because our determination centers on a question of statutory interpretation, our review is *de novo. Land v. Board of Education of the City of Chicago*, 202 Ill. 2d 414, 421, 781 N.E.2d 249, 254 (2002).

■ Our primary goal in statutory construction is to effectuate the intent of the legislature. The best evidence of legislative intent may be found in the words of the statute itself. *Land*, 202 Ill. 2d at 421, 781 N.E.2d at 254. Where a statute is unambiguous, its words must be given their plain and ordinary meaning without resort to other tools of statutory construction. *Land*, 202 Ill. 2d at 421-22, 781 N.E.2d at 254.

■ The underinsured-motorist statute here at issue provides, in pertinent part:

> "For the purpose of this Code[,] the term 'underinsured motor vehicle' means a motor vehicle whose ownership, maintenance[,] or use has resulted in bodily injury or death of the insured, as defined in the policy, and for which the sum of the limits of liability *** is less than the limits for underinsured coverage provided the insured as defined in the policy at the time of the accident. ***
>
> ***.[N]o policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance[,] or use of a motor vehicle shall be renewed or delivered or issued for delivery in this State *with respect to any motor vehicle designed for use on public highways* and required to be registered in this State unless underinsured motorist coverage is included in such policy ***."
>
> (Emphasis added.) 215 ILCS 5/143a—2(4) (West 2000).

We think it clear from both the plain language of the statute and the public policy behind it that it is meant only to require insurance for underinsured vehicles designed for and used on public roads. Steele cites *Roberts v. Country Mutual Insurance Co.*, 231 Ill. App. 3d 713, 596 N.E.2d 185 (1992), in support of her contention to the contrary. There, an insurance policy contained an *uninsured*-motorist provision with an exclusion for motor vehicles designed primarily for off-road

use. The exclusion did not apply, however, if such off-road vehicles were being used on public roads. *Roberts*, 231 Ill. App. 3d at 715, 596 N.E.2d at 185. The insureds' minor son was injured on an ATV. *Roberts*, 231 Ill. App. 3d at 715, 596 N.E.2d at 186. The statutory uninsured-motorist provision in effect at that time provided that no automobile insurance policy " 'shall be renewed or delivered or issued for delivery in this State *** unless coverage is provided *** for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles.' " *Roberts*, 231 Ill. App. 3d at 716, 596 N.E.2d at 186, quoting Ill. Rev. Stat. 1989, ch. 73, par. 755a(1).

The court noted that the Insurance Code did not contain a definition of the term "motor vehicle" and that, therefore, the definition of that term found in the Illinois Vehicle Code (Vehicle Code) (Ill. Rev. Stat. 1989, ch. 95½, par. 1—146 (now 625 ILCS 5/1—146 (West 2000))) was incorporated by reference into the Insurance Code. *Roberts*, 231 Ill. App. 3d at 716-17, 596 N.E.2d at 186, citing *Hartford Accident & Indemnity Co. v. Holada*, 127 Ill. App. 2d 472, 477, 262 N.E.2d 359, 362 (1970). The court found that the broad definition of "motor vehicle" contained in the Vehicle Code clearly included ATVs. *Roberts*, 231 Ill. App. 3d at 717, 596 N.E.2d at 186-87. Given the absence of any language to the contrary in the uninsured-motorist statute then in effect, the court found that it mandated coverage for ATVs. *Roberts*, 231 Ill. App. 3d at 717, 596 N.E.2d at 187.

As Insura points out, the current version of the uninsured-motorist statute that had been at issue in *Roberts* contains language nearly identical to the relevant language in the underinsured-motorist statute we interpret today. See 215 ILCS 5/143a(1) (West 2000) ("[n]o policy *** [on] a motor vehicle that is designed for use on public highways" may be issued or renewed without uninsured-motorist coverage). The legislation that added the phrase "designed for use on public highways" to the uninsured-vehicle statute added the same phrase to the underinsured-vehicle statute. Pub. Act 86—841, § 1, eff. January 1, 1990 (amending Ill. Rev. Stat. 1987, ch. 73, pars. 755a(1), 755a—2(1), (5) (now see 215 ILCS 5/143a(1), 143a—2(1), (4) (West 2000))). Insura contends that this statutory change would change the result of *Roberts*, while Steele contends that the placement of the phrase "designed for use on public highways" in the underinsured-motorist statute indicates that the legislature meant to narrow the reach of the statute to those policies insuring vehicles designed for use on public highways rather than to limit the type of underinsured vehicle for which underinsured-motorist protection must be included. We agree that the legislature intended to limit the reach of the statute to poli-

cies covering highway-use vehicles by adding the phrase. However, we think the result is the same as Insura contends—that is, by limiting the applicability of the two statutes to policies providing liability coverage to highway-use vehicles, the legislature also must have intended to limit the type of vehicle for which uninsured- and underinsured-motorist coverages must be included to the same class of vehicle.

Steele's reliance on the statutory definitions of "motor vehicle" and "underinsured motor vehicle" is misplaced. As she points out, the *Roberts* court relied on the statutory definition of a "motor vehicle" to find that the uninsured-motorist provision applied to the ATV. The court stated, "If an ATV was not to be considered a motor vehicle for purposes of the uninsured motorist statute, the legislature could have provided an exclusion." *Roberts*, 231 Ill. App. 3d at 717, 596 N.E.2d at 187. Steele contends that the definition of "underinsured vehicle" found in the first paragraph of the underinsured-motorist statute does not limit that term to vehicles designed for use on public highways. See 215 ILCS 5/143a—2(4) (West 2000). She further contends that the legislature could not have intended to change the statutory definition of "vehicle" by the addition of the phrase "designed for use on public highways." Although we agree that the legislative change did not alter either definition, we find these contentions unavailing.

The Vehicle Code defines "motor vehicles" broadly to include "[e]very vehicle which is self-propelled and every vehicle which is propelled by electric power obtained from overhead trolley wires[ ] but not operated upon rails, except for vehicles moved solely by human power and motorized wheelchairs." 625 ILCS 5/1—146 (West 2000). However, it only requires liability insurance to cover those "motor vehicle[s] designed to be used on a public highway." 625 ILCS 5/7—601(a) (West 2000). Likewise, the Insurance Code can require underinsured-motorist protection to cover only a certain class of underinsured vehicle without narrowing its definition of an underinsured vehicle. We note that insurers *may* provide underinsured-motorist coverage beyond that mandated by statute. Thus, there is a reason to define "underinsured motor vehicle" broadly enough to include vehicles for which underinsured-motorist protection is not required. Thus, we do not believe that these statutory definitions control our decision.

■ Rather, we find guidance for our decision in the public policy behind the mandatory-insurance provisions of the Vehicle Code and the Insurance Code. The Vehicle Code requires the owner or operator of "a motor vehicle designed to be used on a public highway" to carry liability insurance on the vehicle; there is no requirement that vehicles

not falling into this category be insured. 625 ILCS 5/7—601(a) (West 2000). The purpose of uninsured-motorist coverage is to place an insured who is injured by an uninsured driver in the position she would have been in had the driver carried liability insurance in the required amount. The purpose of underinsured-motorist coverage is to place the insured in the position she would have been in if an insured motorist had carried sufficient insurance beyond the amount minimally required by law. *Gibbs v. Madison Mutual Insurance Co.*, 242 Ill. App. 3d 147, 154, 610 N.E.2d 143, 148 (1993). Because underinsured-motorist protection is meant to fill in a gap left by mandatory liability insurance, it would make no sense to interpret the statute to mandate that such coverage be provided to cover vehicles for which even basic liability insurance is not required. The public policy to be served by requiring protection for injuries incurred due to highway-use vehicles simply is not served by imposing such a requirement. We note that the exclusion in the Steeles' Insura policy, by its own terms, does not apply to off-road vehicles such as the ATV while they are used on a highway. Thus, it provides adequate protection from the type of harm the underinsured-motorist statute was meant to address.

■ The conclusion we reach is in accord with decisions of other jurisdictions holding that excluding uninsured- and underinsured-motorist coverage from off-road vehicles does not violate public policy. See, *e.g.*, *Corbett v. Smith*, 131 N.C. App. 327, 329, 507 S.E.2d 303, 305 (1998) (finding an uninsured-motorist statute inapplicable to an ATV); *Anderson v. State Farm Mutual Automobile Insurance Co.*, 314 S.C. 140, 143, 442 S.E.2d 179, 181 (1994) (farm tractors are not subject to mandatory uninsured- or underinsured-motorist coverage); *State ex rel. Toastmaster, Inc. v. Mummert*, 857 S.W.2d 869, 871 (Mo. App. 1993) (a forklift is not subject to mandatory uninsured-motorist coverage); *Arbella Mutual Insurance Co. v. Vynorious*, 34 Mass. App. 121, 122, 607 N.E.2d 431, 432 (1993) (uninsured-motorist coverage is not required for snowmobiles); *West American Insurance Co. v. Pirro*, 167 Ariz. 437, 438, 808 P.2d 322, 323 (1990) (excluding off-road vehicles from uninsured-motorist coverage does not violate public policy); *Stepec v. Farmers Insurance Co.*, 301 Minn. 434, 438, 222 N.W.2d 796, 799 (1974) (the uninsured-motorist statute does not apply to snowmobiles used off-road). We acknowledge that most of these jurisdictions have statutes limiting the definition of "motor vehicle" to those vehicles designed to be driven on public highways. The lone exception is the Massachusetts statutory scheme the *Vynorious* court considered. *Vynorious*, 34 Mass. App. at 122-23, 607 N.E.2d at 432 (noting that the snowmobile fell within the statutory definition of a "motor vehicle"). Because nothing in our underinsured-motorist statute requires

underinsured-motorist coverage to be extended to all underinsured motor vehicles and because, as we have noted, the purpose of the requirement is not frustrated by exclusions such as the one in the Steeles' policy, we do not find this distinction dispositive. Indeed, most of these decisions set forth the same public policy rationale for allowing the exclusion that we find applicable here. *Corbett*, 131 N.C. App. at 329, 507 S.E.2d at 305 (the purpose of vehicle insurance requirements would not be served by interpreting the uninsured-motorist statute to cover accidents involving vehicles not subject to compulsory insurance that take place on private property); *Anderson*, 314 S.C. at 143, 442 S.E.2d at 181 ("uninsured motorist statutes were not intended to apply to injuries inflicted by vehicles not subject to *** compulsory insurance provisions"); *Mummert*, 857 S.W.2d at 871 (off-road vehicles may be excluded from uninsured-motorist coverage provisions because they are not subject to mandatory liability insurance); *Pirro*, 167 Ariz. at 438, 808 P.2d at 323 (because liability insurance is not required for off-road vehicles, excluding them from uninsured-motorist coverage does not violate public policy). We conclude that the exclusion in the Steeles' insurance policy does not violate the public policy of Illinois and is therefore enforceable.

## III. CONCLUSION

For the foregoing reasons, we reverse the judgment of the trial court.

Reversed.

WELCH and MAAG, JJ., concur.